**WHOLE COURT**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 30, 2017**

# In the Court of Appeals of Georgia

A17A0639. BLEVINS v. THE STATE.

RAY, Presiding Judge.

A jury convicted Thomas Harold Blevins of enticing a child for indecent purposes (OCGA § 16-6-5 (a)) and four counts of child molestation (OCGA § 16-6-4 (a)).[1] Blevins appeals from the denial of his motion for new trial, contending in related enumerations that the trial court erred in admitting "other acts" evidence of his interactions with several other girls under OCGA § 24-4-404 (b), and also erred in admitting the testimony of another teenaged witness under OCGA §§ 24-4-413 and 24-4-414. Blevins also argues that the trial court erred in allowing the prosecutor to

---

[1] The jury acquitted Blevins of aggravated child molestation and false imprisonment.

make inappropriate remarks during closing argument, and in denying his motion in arrest of judgment. For the reasons that follow, we affirm.

Viewing the evidence in the light most favorable to uphold the guilty verdict,[2] the evidence shows that Blevins was the band director at Lakeview Middle School in Catoosa County, and also assisted with the marching band at Lakeview-Fort Oglethorpe High School. The victim in the instant case, B. P., had been one of Blevins' middle school band students. Blevins began communicating with her via text messages, which first were innocuous but then became "more intense[,]" telling B. P. that she was "beautiful" and asking her to meet him in the band room. He asked her to send him naked photos of herself, which she did. He also texted her about a book titled "Crazy," which contained a sex scene. B. P. testified that Blevins specifically referenced a yellow condom, telling her "that's what me and him should do." Even though she told him that "it wasn't for me[,]" he "didn't stop."

The texting about the book took place in December 2010 when B. P. was 14 years old. That same month, shortly before Christmas, B. P. went to the school band room at Blevins' request to help fix the bass clarinets. He had texted her that "other members of the high school band would be there," but when she arrived, they were

_____

[2]*Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 S.Ct. 2781) (1979).

2

not. Instead, Blevins told her to go to the storage room "whenever you're ready," and he placed a music stand against the band room door, telling her that if someone came in, "I want to be able to hear them[.]"

Once B. P. and Blevins were in the storage room, Blevins grabbed B. P.'s arm, started rubbing the tops of her thighs, and kissing her. She was unable to get away, though she tried. Blevins sat B. P. on his lap, facing him, took off her shirt, and rubbed her breasts and between her legs over her underwear. He next turned off the lights and took B. P. behind a rack of chairs, where blankets and pillows were laid on the floor. He removed all her clothes, laid on top of her, and touched her vaginal area with his fingers. He unzipped his pants and made her perform oral sex. Later, his penis touched her vagina. Although B. P. kept saying "no," Blevins laughed and said, "that's okay, I got what I wanted." He then left B. P. in the storage room, where she sat in shock before putting her clothes on and going to the gym bathroom to "wash[] myself from head to toe." Soon after, Blevins texted: "thanks for the early Christmas present."

B. P. did not tell her mother what happened, as Blevins had warned B. P. that telling anyone else would "ruin" both "his job and his life[.]" Later, in 2011, Blevins texted: "we will wait until you're 18 so I won't get in trouble[.]"

3

Almost two years after the storage room incident, B. P. confided in a friend, who told the school's guidance counselor. Subsequently, B. P. agreed with investigators to participate in a recorded phone call with Blevins. On the call, which was played for the jury, B. P. asked Blevins what she should tell her mother, who was getting suspicious. Blevins told her, "For my sake and your sake, just say . . . nothing ever happened. Mr. Blevins is a good man." He said he had some problems with texts to students that were "not academic" but "not any kind of dirty texts" because if that were the case, he would be in "jail." He asked her to "have my back[.]"

At trial, the State also entered into evidence Blevins' cellular telephone records for a four-year period ending December 11, 2012. A Georgia Bureau of Investigation ("GBI") analysis showed that Blevins' phone was in the area of Lakeview Middle School on the date B. P. was molested. The analysis also showed that he had communicated with B. P. 5,231 times during the four-year period. It also showed that during this period that Blevins had communicated with other current or former female band students. Specifically, he had communicated with E. K. 1,996 times and with H. C. 962 times. The State called these girls as "other acts" witnesses.

Blevins was convicted, as outlined above, of enticing a child for indecent purposes and of child molestation. OCGA § 16-6-5 (a) provides that "[a] person

commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." OCGA § 16-6-4 (a) (1) provides that "A person commits the offense of child molestation when such person: . . . Does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" Blevins does not contest the sufficiency of the evidence.

1. Blevins argues that the trial court erred in admitting, pursuant to OCGA §§ 24-4-413 and 24-4-414, evidence of his sexual behavior toward E. K., arguing that the trial court failed to consider whether the probative value of her testimony was outweighed by the prejudicial effect. We find no error.

We review this contention of error for abuse of discretion. *Steele v. State*, 337 Ga. App. 562, 565-566 (3) (788 SE2d 145) (2016).[3] OCGA § 24-4-414 (a) provides that, "[i]n a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child

___

[3] Because Blevins was tried in August 2015, we will address evidentiary issues raised in this appeal under Georgia's new Evidence Code. See Ga. L. 2011, p. 99 § 101 (new Code applies to "any motion made or hearing or trial commenced on or after " January 1, 2013).

5

molestation *shall be admissible* and may be considered for its bearing on *any matter* to which it is relevant." (Emphasis supplied).

When E. K. was 15 years old, Blevins told her during private music lessons that "if [she] messed up he was going to touch [her] breast or kiss [her] neck." E. K. testified that Blevins made contact with her breasts and upper thigh multiple times. During one lesson at the high school, Blevins pulled down E. K.'s pants.

"The child molestation statute OCGA § 16–6–4 (a) requires only that the defendant have acted with the intent to arouse his sexual desires. And the question of intent is peculiarly a question of fact for determination by the jury." (Citation and punctuation omitted.) *Dority v. State*, 335 Ga. App. 83, 95 (3) (780 SE2d 129) (2015). A jury could determine that Blevins acted with E. K. with the intent to arouse his sexual desires, especially given that while driving her home from a music lesson, he said he was taking her to his house to "make whoopee[,]" a clear reference to his desire for sex with an underage girl. Id. (defendant asking victim if she felt as if he would molest her admissible under OCGA § 24-4-414).

To the extent that Blevins attempts to argue that the trial court erred in admitting the evidence under OCGA § 24-4-404 (b), OCGA §§ 24-4-413 and 24-4-414 control, as they are the more specific statutes regarding admission of prior acts

6

of child molestation. *Dority*, supra at 95 (3). As such, OCGA § 24-4-413 "create[s] a 'rule of inclusion,' with a strong presumption in favor of admissibility[.]" *Steele*, supra at 566 (3). See also *U. S. v. Brimm*, 608 F. Appx. 795, 798 (I) (C) (11th Cir. 2015) (finding that federal rules 413 and 414 permit the introduction of propensity evidence in sexual assault and child molestation cases, providing exceptions to Rule 404 (b)'s general ban on propensity evidence).

Finally, pretermitting whether the OCGA § 24-4-403 balancing test applies in the context of OCGA §§ 24-4-413, 24-4-414, see *Robinson v. State*, – Ga. App. – *8 (4) (b), n. 9 (Case No. A17A1415, decided August 23, 2017), the trial court specifically referenced OCGA § 24-4-403 and, thus, implicitly found the evidence admissible pursuant to the test. See *Entwisle v. State*, 340 Ga. App. 122, 131 (2) (796 SE2d 743) (2017) (where trial court did not make specific findings as to whether probative value outweighed prejudice, it explicitly referenced OCGA § 24-4-403, thus finding admissibility pursuant to the test).

2. Blevins next argues that the trial court erred admitting evidence of prior bad acts pursuant to OCGA § 24-4-404 (b) involving "other acts" witnesses. As to all these witnesses, Blevins argues that the evidence did not show the same motive or

7

intent as the charged crimes, and that the evidence had greater prejudicial impact than probative value. We disagree.

We will overturn a trial court's admission of other acts evidence only where there has been a clear abuse of discretion. *Steele*, supra. In determining whether extrinsic evidence is admissible, we look first to the language of OCGA § 24-4-404 (b) which provides that:

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent,[4] preparation, plan, knowledge, identity, or absence of mistake or accident.[5]

Further, the State must show that (1) the other acts evidence is relevant to an issue other than the defendant's bad character; (2) its probative value is not substantially outweighed by its unfair prejudice; and (3) proof is sufficient to authorize the jury to find that the accused committed the other acts. *Brooks v. State*, 298 Ga. 722, 724 (2)

---

[4] Blevins entered a plea of not guilty. The crimes of which he was convicted are intent crimes. See OCGA § 16-6-4 (a) (1) (child molestation), and *Clark v. State*, 323 Ga. App. 706, 708 (747 SE2d 705) (2013) (enticing a child).

[5] The trial court permitted the introduction of other acts evidence for the purposes of showing motive and intent.

(783 SE2d 895) (2016). OCGA § 24-4-403, which the prejudice prong addresses, provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Blevins concedes that sufficient proof existed that he committed all of the "other acts" introduced, so our analysis will focus only on the prejudice and relevance prongs.

(a) *Current or former band students H. C., A. L., and M. G; colleagues Chad Reynolds and Richard Stichler.*

H. C. testified that while volunteering at the school music library, she texted Blevins to ask where he was. He responded by "asking me to come swimming at his house." When she responded that she did not have a suit, he texted back, "no bathing suit required." A.L. testified that when she was in the sixth grade, Blevins made her late to her next class and told her that she would have to "hop on one foot" or "lick his ear" or "show him [her] belly" to get an excused tardy. He also asked her to massage him, which she did, and hugged her while she stood between his legs. When M.G. was 13 years old, Blevins sent her texts calling her "cute" and using nicknames

9

in reference to her tongue, including "ant eater" and "little Gene" (as in Gene Simmons of the band Kiss).

Chad Reynolds and Richard Stichler knew Blevins professionally. Reynolds was in music school with Blevins, and Stichler is the Lakeview-Fort Oglethorpe High School band director. Reynolds and Stichler testified, respectively, that Blevins knew of, yet ignored, professional standards and county recommendations against communicating with students via text and social media. Reynolds testified that Blevins was Facebook friends with students and posted comments about them, and that he showed Reynolds photographs of female students on his phone, commenting on their beauty and speculating on what they would look like in high school. Stichler testified that Blevins posted photographs of students in their swimsuits on Facebook, saying that they were "[b]eautiful."

As our Supreme Court determined in *Olds v. State*, 299 Ga. 65 (786 SE2d 633) (2016), "evidence has 'relevance' if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (Citation and punctuation omitted.) Id. at 74-75 (2). Probative value must be assessed on a case-by-case basis. Id. at 76 (2). Here, "because a plea of not guilty puts the prosecution to its burden of proving

every element of the crime – including intent – evidence of other acts that tends to make the requisite intent more or less probable to any extent is relevant. *That is true . . . whether or not intent is actively disputed at trial.*" (Citations omitted; emphasis supplied.) Id. at 75 (2). Further, exclusion of otherwise relevant and probative evidence under OCGA § 24-4-403 "is an extraordinary remedy which should be used only sparingly." (Citation, punctuation, and footnote omitted.) *Olds*, supra at 70 (2).

The other acts evidence outlined above regarding Blevins' communications and interactions with his young female students, and his comments to colleagues about the photographs of these girls in their swimsuits as well as his perception of their beauty, now and in the future, was relevant and probative. "Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses." (Citations and punctuation omitted.) *Bradshaw v. State*, 296 Ga. 650, 657 (3) (769 SE2d 892) (2015). As to both B. P. and the other acts students, Blevins used his position of authority as a band director to prey on the girls under his supervision through suggestive acts and sexual banter, and inappropriate touching, which he intended to entice them into indecent or sexual acts that aroused their sexual desires or his own. *Olds*, supra at 74-75 (2). Blevins' communications with his colleagues

11

further showed his motivation to connect sexually with underage girls whom he deemed beautiful and his intent to leverage those connections into sexual contact. Id. See *Bradshaw*, supra at 657 (2) (motive is "the reason that nudges the will and prods the mind to indulge the criminal intent") (citation and punctuation omitted).

Further, the probative value of this relevant evidence was not substantially outweighed by a danger of unfair prejudice, a confusion of the issues, or the risk of misleading the jury. OCGA § 24-4-403. It added value through its similarity to the other proof available to establish the facts at issue, and the State had a strong need for the evidence to combat Blevins' attacks on B. P.'s credibility. *Olds*, supra at 75-76 (2). As well, these extrinsic acts were "not of such a heinous nature that they were likely to incite the jury to an irrational decision." (Citation omitted.) *U.S. v. Hewes*, 729 F.2d 1302, 1315 (IV) (11th Cir. 1984). Finally, the trial court repeatedly gave limiting instructions that applied to all extrinsic evidence testimony. See *U. S. v. Jernigan*, 341 F.3d 1273, 1282 (II) (B) (11th Cir. 2003).

(b) *Band student S. P.*

S. P. testified that on Thanksgiving in 2012, Blevins texted her on her mother's cell phone. S. P.'s father intercepted the texts and responded, not knowing who they were from until S. P. later identified them as coming from Blevins. S. P. testified that

12

her father showed her the conversation. On cross-examination, defense counsel asked S. P. if, while reading Blevins' texts, she thought he was joking. She responded, "somewhat[,]" but testified that she found the texts "weird[.]" On redirect, she explained that she referred to the texts as weird because Blevins "said he needed a cuddle buddy, which was awfully weird to me to say to a student." On re-cross, defense counsel asked about Blevins' texting S. P. that he was "in your closet, under your bed[,]" and S. P. affirmed that Blevins had texted her in those terms, which she found "weird[.]"

Despite Blevins' contentions on appeal that the testimony should not have been admitted because it lacks the same intent and motive as the charged offenses, and that its prejudicial impact outweighed its probative value, we find the testimony was admissible for the reasons outlined in Division (2) (a), supra.

Further, it is clear from the record, as outlined above, that defense counsel elicited much of the complained-of testimony, specifically, S. P.'s first mention that Blevins' texts were "weird" and that he said he was in her closet or under her bed. In general, a defendant may not complain on appeal about the admission of evidence that he introduced, even where the trial court has overruled his objection to that evidence. See *Adkins v. State*, 301 Ga. 153, 156 (2) (800 SE2d 341) (2017).

(c) *S. P.'s father*.

Blevins argues that the testimony of S. P.'s father should not have been admitted under OCGA § 24-4-404 (b) because the father's name was not listed in the State's notice of intent to introduce other acts evidence and, as a result, the trial court order did not address its admissibility.

OCGA § 24-4-404 (b) provides in pertinent part that the State give the defense reasonable notice in advance of trial "of the *general nature of any such evidence* it intends to introduce at trial[.]" (Emphasis supplied).[6] Here, the State's notice of intent to introduce similar transactions listed the victims' names, including S. P.'s, and outlined the general nature of the testimony involving Blevins' dealings with S. P., about which her father testified. The trial court's order clearly considered the general nature of that testimony.

Even if this were error, which we do not find, such error would be harmless. Blevins has failed to explain how he was prejudiced by this alleged lack of notice. Nor did he address at trial or on appeal "what measures he might have taken . . . to meet the evidence" had the State's notice listed S. P.'s father in addition to its

_____

[6] We note that OCGA § 24-4-404 (b) contains no requirement of a listing of witnesses, nor does Blevins point us to any case law mandating a list of names.

14

statement about the general nature of the evidence regarding S. P. See *U. S. v. Perez-Tosta*, 36 F.3d 1552, 1562 (III) (B) (2) (11th Cir. 1994). Further, the trial judge reiterated the appropriate limiting instructions it had given when other 404 (b) witnesses testified. *Jernigan*, supra ("Any unfair prejudice that may have existed was mitigated by the [trial] judge's limiting instruction") (citation and punctuation omitted).

Blevins argues that the evidence from S. P.'s father was not relevant to an issue other than character, did not show intent or motive, and its probative value was outweighed by its prejudicial impact. However, the testimony about Blevins' wish to take S. P. shopping, presumably in exchange for the chance to "cuddle" with her or engage in other sexually related behavior, showed Blevins' motive and intent to entice her to indecent acts and to arouse his own sexual desires with underage girls. Evidence that an accused committed an intentional act is generally relevant and tends to make more probable his commission of a similar act with the same intent. *Olds*, supra at 72 (2). We find no abuse of discretion.

(d) *Other acts evidence was not cumulative.*

Finally, Blevins argues that the other acts evidence was cumulative, with prejudicial effect outweighing probative value. We disagree.

15

It is true that "needless presentation of cumulative evidence" can be one reason for excluding relevant evidence. (Citation and punctuation omitted.) *Olds*, supra at 70 (2). However, "[t]he requisite intent may be inferred from the fact that, *after being involved in a number of similar incidents*, the defendant must have had a mental state that is inconsistent with innocence" and a defendant's prior conduct "often sheds light on his state of mind at the time of the event in question." (Citations and punctuation omitted; emphasis supplied.) Id. at 72 (2).

Here, Blevins attempted to undermine B. P.'s credibility at trial, pointing out inconsistencies in her statements about how much she and Blevins texted and the content of the texts. Blevins also elicited evidence about inconsistencies in what she told her mother, investigators, and a counselor about the molestation, and attempted to show that she fabricated details about the storage room incident. See *Kritlow v. State*, 339 Ga. App. 353, 355-356 (2) (793 SE2d 560) (2016). Accordingly, the evidence that Blevins sent large numbers of texts to students, used sexual or suggestive banter in texts or in-person communication, and had inappropriately touched other young female students, "had the tendency to bolster the credibility of the victim by demonstrating that her circumstances were not unique. Indeed, it had the tendency to disprove a claim of fabrication by showing that [Blevins] preyed on

16

[girls] in the victim's circumstance" of being under his supervision as a band director. (Citation omitted.) Id. at 356 (2). See *U. S. v. St. Claire*, 831 F.3d 1039, 1042 (II) (A) (8th Cir. 2016) (other acts testimony of girl who, like victims of the charged crimes, was granddaughter of defendant's wife, was probative of defendant's consistency in molesting wife's grandchildren in his home). See generally *U. S. v. Gaus*, 471 F.2d 495, 498-500 (II) (7th Cir. 1973) (finding no abuse of discretion in admission of 11 similar transactions in a fraud-related case because even "excessive proof" did not require reversal where record contained clear evidence of defendant's guilt such that it was unlikely that limiting the quantity of other acts evidence would have changed the outcome of trial).

Finally, if this evidence were prejudicial, it stands to reason that it would have affected all the counts against Blevins. His acquittal for aggravated child molestation and false imprisonment indicates that its admission did not affect the verdict. See *Edmonson v. State*, 336 Ga. App. 621, 626 (1) (785 SE2d 563) (2016).

3. Blevins next asserts that the prosecutor made improper remarks during closing arguments by referring to the allegedly impermissible "other acts evidence." Specifically, he argues that the trial court erred in denying his motion for a mistrial

because the prosecutor inappropriately referred to him as "creepy."[7] He also raises a

"Golden Rule" argument, contending that the prosecutor inappropriately asked jurors

to place themselves or their children in the role of the victim. We find no error.

"The granting or refusal to grant a mistrial has long been held to be largely in

the discretion of the trial judge, but a mistrial should be granted when it is essential

to preserve the right of a fair trial." (Citation and punctuation omitted.) *Hopkins v.

State*, 337 Ga. App. 143, 144 (786 SE2d 543) (2016).

(a) *Prosecutorial references*. Blevins objected to the prosecutor's references,

in closing arguments, to "character evidence" and to Blevins' "general creepiness."

As an initial matter, we have found that the other acts evidence, to which the

prosecutor referred in closing argument, was relevant, probative, and properly

admitted. Thus, it was within the appropriate scope of closing argument. *Bryant v.

State*, 288 Ga. 876, 890 (11) (708 SE2d 362) (2011).

Also, in analogous instances, this Court has found no error where the

prosecutor's remark represented a reasonable inference based upon evidence

---

[7] Although Blevins also argues that the prosecutor inappropriately referred to him as a "pervert," the record citation he provides does not show the prosecutor's use of that word. We will not cull the record in search of error. *Beaudoin v. State*, 311 Ga. App. 91, 95 (5) (714 SE2d 624) (2011).

presented at trial. There was testimony adduced at trial from, inter alia, the instant victim, B. P., that when she was 14, Blevins text messaged her about the sexual scenes portrayed in a book, telling her that "we could do everything in the book, even the yellow condom that was mentioned[,]" and that he called her in to the band storage room, blocked the door with a music stand, and made her perform oral sex on him. Another child, H. V., testified without objection that when she was a 14-year-old band student, Blevins called her out of class to meet him in the band storage room, where he kissed her and touched her breasts. She testified that she was scared and intimidated. Thus, the prosecutor's references to Blevins' creepiness were supported by reasonable inferences raised by trial evidence. See *Cooper v. State*, 178 Ga. App. 709, 712 (3) (345 SE2d 606) (1986) (prosecutor's reference to defendant as a "pervert" and a "loan shark" during closing argument based on reasonable inferences raised by trial evidence that defendant engaged in unnatural sex with children and accepted $1,000 in interest on a $2,500 loan). In the instant case, the trial court instructed the jury that the lawyers' opening and closing arguments were not evidence, and no reasonable probability exists that the prosecutor's remarks changed the result of Blevins' trial. See *Peterson v. State*, 282 Ga. 286, 290 (3) (647 SE2d 592) (2007) (prosecutor's reference to defendant as "evil" and untruthful was

19

permissible given the evidence and where trial court instructed jury that lawyers' arguments were not evidence).

(b) *Golden Rule argument.* For the first time on appeal, Blevins also attempts to raise a "golden rule" argument, contending that a portion of the prosecutor's argument inappropriately placed the jury in the role of the victim. See generally *Jackson v. State,* 282 Ga. 494, 499 (5) (651 SE2d 702) (2007) (explaining concept of "golden rule" argument). Blevins, however, failed to object on this basis in the trial court. See *Bills v. State,* 283 Ga. App. 660, 664 (3) (642 SE2d 352) (2007) (finding appellate allegation of error in prosecutor's closing argument not preserved for review where defendant did not raise that specific objection at trial). Accord *Jowers v. State,* 272 Ga. App. 614, 617 (2), n. 4 (613 SE2d 14) (2005) (golden rule argument waived on appeal where not specifically objected to below), overruled on other grounds by *Miller v. State,* 285 Ga. App. 285, 286-287, n. 1 (676 SE2d 173) (2009). We note that "the Georgia Legislature has not yet made plain error review available for errors relating to alleged improper remarks being made during closing argument[.]" (Citations omitted.) *Gates v. State,* 298 Ga. 324, 329 (4) (781 SE2d 772) (2016).

4. Blevins argues that the trial court erred in denying his motion in arrest of judgment, contending that the not-guilty verdict in Count 1 (aggravated child molestation, OCGA § 16-6-4 (c)) and the guilty verdict in Count 10 (child molestation, OCGA § 16-6-4 (a)), are repugnant because he was found guilty and not guilty of the same crime committed against the same victim at the same time under virtually identical charges.[8] We disagree.

In support of his argument, Blevins cites to a case which appears to be an outlier in our law, *Wiley v. State*, 124 Ga. App. 654 (185 SE2d 582) (1971) (finding error in trial court's failure to grant a motion in arrest of judgment where, under identical accusations, defendant was convicted on one count and acquitted on another, because self-contradictory and repugnant verdicts cannot stand). However, in a recent opinion, *Carter v. State*, 298 Ga. 867 (785 SE2d 274) (2016), our Supreme Court noted that it never had adopted the *Wiley* rationale and that the inconsistent verdict rule had been abolished in *Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986). (Citations and punctuation omitted.) Id. at 868. Since *Milam*, a defendant may no longer attack as inconsistent a verdict of guilty on one count and

---

[8] We note that Blevins appears to have been found guilty of the lesser included offense.

not guilty on another. This is so because courts do not know and should not speculate on why a jury convicted on one offense and not another; the verdict could be the result of mistake, compromise, or lenity exercised in favor of the defendant. *Carter*, supra.

For clarity, we note that the Court of Appeals in *Wiley*, supra, identified repugnant verdicts as those involving a conviction and acquittal on identical charges. In *Carter*, the Supreme Court did not reach the applicability of the *Milam* rule on inconsistent verdicts to *Wiley*'s repugnant verdicts, although we believe that the Court's holding therein implicitly rejects *Wiley* as a viable precedent. As our Supreme Court reiterated in *Carter*, supra, an appellate court generally lacks the power to inquire or speculate as to the jury's rationale. This is so because, as the United States Supreme Court noted in *U. S. v. Powell*, 469 U. S. 57 (105 SCt 471, 83 LE2d 461) (1984), on which *Milam* relies, inconsistent verdicts represent error in which "it is unclear whose ox has been gored." *Powell*, supra at 65. The dissonance that exists in inconsistent verdicts is analogous to that existing in the *Wiley*-defined repugnant verdicts. Given the Supreme Court's disavowal in *Carter* of any acceptance of *Wiley*'s rationale, we find it appropriate to apply *Milam*'s reasoning to repugnant verdicts as defined in *Wiley*. In so doing, we overrule *Wiley*, supra, and any progeny.

22

*Judgment affirmed. Dillard, C. J., Barnes, P. J., Miller, P. J., Ellington, P. J., McFadden, P. J., Andrews, Doyle, Branch, McMillian, Mercier, Rickman, Self, Reese, Bethel, JJ., concur.*