**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 11, 2019**

# In the Court of Appeals of Georgia

A19A0899. O'SHIELDS v. THE STATE.

MARKLE, Judge.

Following a jury trial, Robert O'Shields was convicted of two counts of homicide by vehicle in the first degree (OCGA § 40-6-393 (a)); two counts of DUI less safe (OCGA § 40-6-391 (a)); and one count of possession of methamphetamine (OCGA § 16-13-30 (a)).[1] He now appeals from the trial court's denial of his motion for new trial, as amended, arguing that (1) the trial court should have granted his motion to suppress the results of his blood test; (2) the trial court erred in refusing to charge the jury on a lesser included offense; and (3) he received ineffective assistance of counsel. After a thorough review of the record, and for the reasons that follow, we

---

[1] The jury acquitted O'Shields of an additional count of homicide by vehicle based on reckless driving and the traffic offense of reckless driving. Prior to trial, the State also nolle prossed another count of homicide by vehicle and one count of DUI.

affirm the denial of the motion to suppress, but we reverse the denial of the motion for new trial, and remand the case for further proceedings.

Viewing the evidence in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the record shows that, in the early morning hours of May 25, 2015, O'Shields rear-ended a fire truck that was stopped on the expressway in Clayton County due to a previous, unrelated accident. The passenger in O'Shields's car was killed and O'Shields was injured in the accident. O'Shields was taken to the hospital, where Georgia State Patrol troopers interviewed him while he was awaiting surgery.

At the time of the interview, O'Shields was able to answer questions, was aware of the accident, and asked the troopers about the passenger. He told the troopers that his passenger, who was a heavy man, had collapsed on him, and he was taking the passenger to the hospital when the accident occurred. Although he seemed cognizant, the troopers noticed he spoke with slurred speech and had likely received pain medication prior to the interview. The two state troopers interviewing O'Shields believed he might have been under the influence at the time of the accident, and one of them asked him for consent for a blood test. O'Shields gave consent, and the blood

test results were positive for methamphetamine, amphetamine, and alprazolam (Xanax).

Before he was taken into surgery, O'Shields gave his belongings to hospital staff, including a tin box that he told staff was "special" and which he instructed the staff not to open. Police later determined the contents of the box to be 5.05 grams of methamphetamine.

Investigators obtained crash data from the airbag modules in O'Shields's car. The data showed that O'Shields had been traveling 76 miles per hour seconds before the accident, and 74 miles per hour at impact. The posted speed limit was 65 miles per hour. The data also showed that he had applied his brakes in the seconds leading to the crash. A trooper testified that methamphetamine could slow a driver's response time.

O'Shields requested that the trial court instruct the jury on the lesser included offense of second degree vehicular homicide because the police initially alleged that O'Shields had been following too closely.[2] The trial court declined to do so based on

---

[2] OCGA § 40-6-49 (a) (2015) provides: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."

the manner in which O'Shields was indicted. The jury convicted O'Shields of two counts each of vehicular homicide in the first degree and DUI less safe based on the drugs, and one count of possession of methamphetamine.[3]

Thereafter, O'Shields filed a motion for a new trial and an amended motion for new trial. As is relevant to this appeal, O'Shields argued that the trial court erred in failing to (1) suppress the results of his blood test, and (2) instruct the jury on the lesser included offense of homicide by vehicle in the second degree. He further alleged that he received ineffective assistance of counsel when trial counsel prematurely moved to exclude evidence, which alerted the State to its failure to prove the possession charge.

At a hearing on the motion for new trial, trial counsel testified that, prior to the State resting its case in chief, she moved to exclude any evidence of the methamphetamine because the State had not presented a witness to establish possession. She was aware that the State had a witness on its list, but thought the witness was not going to testify. She admitted, however, that she understood the State

---

[3] The trial court merged the second vehicular homicide conviction and the two DUI convictions into the vehicular homicide conviction in count 1, and sentenced O'Shields only for one count of vehicular homicide and possession of methamphetamine.

could still add witnesses at that point in the trial. The trial court denied the motion for new trial, as amended, and this appeal followed.

1. O'Shields argues that the trial court erred by refusing to suppress the results of the blood test because the State failed to meet its burden to prove that he gave consent. He explains that he was not read the implied consent notice, he was confused and under the influence of pain medication when he was asked for consent, he did not sign a written consent form, and the trooper who testified about obtaining consent was merely a witness to the interview and was not the officer who actually requested consent.[4] We are not persuaded.

> A suspect's right under the Fourth Amendment to be free of unreasonable searches and seizures applies to the compelled withdrawal of blood, and the extraction of blood is a search within the meaning of the Georgia Constitution. In general, searches are of two types: those conducted with a search warrant or those undertaken without one, and searches conducted outside the judicial process are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions.

---

[4] We note that the Supreme Court of Georgia has recently held that the implied consent statute violates the right against self-incrimination and does not amount to actual consent. See *Elliott v. State*, 305 Ga. 179, 222-223 (IV) (E) (824 SE2d 265) (2019). Because O'Shields was not given the implied consent notice, we need not consider the effect *Elliott* has on this case.

(Citations omitted.) *Williams v. State*, 296 Ga. 817, 819 (771 SE2d 373) (2015). "[I]t is well settled in the context of a DUI blood draw that a valid consent to a search eliminates the need for either probable cause or a search warrant." (Citation omitted.) Id. at 821. And, where the State points to consent as the basis for the search, "the State has the burden of proving that the accused acted freely and voluntarily under the totality of the circumstances." (Citations omitted.) Id.

> Specifically, under Georgia law, voluntariness must reflect an exercise of free will, not merely a submission to or acquiescence in the express or implied assertion of authority. Consequently, the voluntariness of consent to search is measured by evaluating the totality of the circumstances, which includes factors such as prolonged questioning; the use of physical punishment; the accused's age, level of education, intelligence, length of detention, and advisement of constitutional rights; and the psychological impact of these factors on the accused.

(Citations and punctuation omitted.) *State v. Bowman*, 337 Ga. App. 313, 317 (787 SE2d 284) (2016). Other factors relevant to the issue of consent include a lack of fear, intimidation, or threats to obtain the consent; the suspect's affirmative response to the request; and the failure to object to the test or change one's mind after giving consent. *MacMaster v. State*, 344 Ga. App. 222, 226-227 (1) (a) (809 SE2d 478) (2018). When reviewing the denial of a motion to suppress, we may consider all of the testimony

6

presented at both the suppression hearing and the trial. *Lindsey v. State*, 287 Ga. App. 412 (651 SE2d 531) (2007).

Here, O'Shields moved to suppress the blood test results on the ground that the State had not shown that he had given valid consent. At a hearing, the state trooper who spoke with O'Shields at the hospital testified that he asked for and received consent for the blood test. The trooper testified that O'Shields appeared to be under the influence and "kind of out of it," which led him to request the test, but that O'Shields understood the request and gave coherent and accurate answers to the trooper's other questions. Additionally, the trooper did not make any promises or threats in order to obtain O'Shields's consent. The trooper further explained that he did not read O'Shields the implied consent law before requesting consent because O'Shields was not under arrest.

The trial court denied the motion without explanation or any factual findings.[5] "The trial court, however, is not required to make express findings of fact after a hearing on a motion to suppress. In such a case, we nevertheless construe the

---

[5] The voluntariness of O'Shields's consent was the only argument made in support of the motion to suppress the results of the blood test. Thus, the trial court's failure to make specific factual findings does not require remand; as there was no other basis for the motion, the trial court's denial of the motion implicitly concludes that the consent was voluntary.

7

evidence most favorably to uphold the trial court's judgment." (Citations omitted.) *State v. Brogan*, 340 Ga. App. 232, 234 (797 SE2d 149) (2017).

Construing that evidence in this case most favorably to uphold the trial court's denial of the motion to suppress, we must conclude that O'Shields's consent was voluntary. The trooper's testimony established that O'Shields was aware of the accident, understood the request for consent, and gave consistent and appropriate responses to the trooper's questions. Moreover, there was no evidence or testimony that O'Shields was threatened or intimidated into giving consent or that he changed his mind after initially giving consent.

The fact that O'Shields may have been under the influence of drugs at the time would not automatically negate his consent. *MacMaster*, 344 Ga. App. at 227 (1) (a); see also *State v. Depol*, 336 Ga. App. 191, 200 (784 SE2d 51) (2016). Nor does the absence of the implied consent notice change the outcome. Even assuming that the troopers should have given O'Shields the implied consent notice, such notice does not equate with voluntary consent. See *Williams*, 296 Ga. at 821-822; see also *MacMaster*, 344 Ga. App. at 226-227 (1) (a) (recognizing that an affirmative response to the implied consent notice does not automatically mean actual voluntary consent to a blood test).

8

"[I]n the absence of evidence of record *demanding* a finding contrary to the judge's determination," we will not reverse the trial court's ruling. (Emphasis in original.) *Bowman*, 337 Ga. App. at 318. Moreover, we presume the trial court knew the law and "faithfully and lawfully perform[ed] the duties devolv[ed] upon him by law. [We] will not presume the trial court committed error where that fact does not affirmatively appear." *Matthews v. State*, 294 Ga. App. 836, 841-842 (4) (670 SE2d 520) (2008). Accordingly, viewing the evidence most favorably to the trial court's order, as required by our standard of review, we must conclude that the trial court properly denied the motion to suppress.

2. O'Shields also argues that the trial court erred in failing to give his requested instruction on the lesser included offense of the vehicular homicide charge. He contends that there was evidence of other traffic offenses that the jury could have found to be the cause of the accident and, therefore, the alternative charge was warranted. We are constrained to agree.

> Under Georgia law, one commits the offense of vehicular homicide in the first degree [under OCGA § 40-6-393 (a)] when he or she, without malice aforethought, causes the death of another person through the violation of certain specified traffic laws, including [reckless driving and] DUI. The offense of vehicular homicide in the second degree is committed when one, without an intention to do so, causes the death of

another person by violating any other Title 40 traffic law not specified in OCGA § 40-6-393 (a). Because the difference between first and second degree vehicular homicide is the culpability of the predicate traffic offense, second degree vehicular homicide is considered a lesser included offense of first degree vehicular homicide.

(Citations and punctuation omitted.) *Smith v. State*, 342 Ga. App. 705, 707 (1) (805 SE2d 460) (2017) (physical precedent only); see also *Otuwa v. State*, 319 Ga. App. 339, 341-342 (2) (734 SE2d 273) (2012); *Brown v. State*, 287 Ga. App. 755, 757 (652 SE2d 631) (2007).

A written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense. Accordingly, a written request to instruct the jury on second degree vehicular homicide must be given in a case charging first degree vehicular homicide if there is any evidence showing that a less culpable traffic offense caused the fatal collision. Specifically, where some evidence shows that the defendant committed an act of following too closely, a traffic violation other than the more culpable offense of DUI, and that such may have caused the collision and resulting death, the fact that the defendant may have also committed a DUI does not demand a finding that the DUI was the sole proximate cause of the collision and of the victim's death. Indeed, because the State must prove that the more culpable traffic offense caused the death, a jury could believe that a defendant was guilty of DUI but that the DUI did not cause the particular death. Instead, a jury might conclude that some

10

other traffic offense caused a particular victim's death. Under such circumstances, there is no evidentiary or legal impediment to the return of a verdict of guilt as to DUI and a verdict of guilt as to second degree vehicular homicide. The trial court errs in refusing to give appellant's request to charge on second degree vehicular homicide.

(Citations and punctuation omitted.) *Brown*, 287 Ga. App. at 757-758. Importantly, the defendant need not be charged with the less culpable traffic offense to be entitled to an instruction on the lesser included offense. *Lefler v. State*, 210 Ga. App. 609, 610-611 (2) (436 SE2d 777) (1993).

The evidence here showed that O'Shields tested positive for methamphetamine, amphetamine, and alprazolam after the accident. The testimony also showed that, at the time of the accident, O'Shields was traveling 74 miles per hour in a 65-mile-per-hour zone and that he had his foot on the brake. Additionally, there was evidence that the state trooper initially obtained arrest warrants for O'Shields after the crash for DUI, vehicular homicide, and following too closely.

We have consistently held that, where there is some evidence – no matter how slight – that there could be another traffic violation that caused the accident, the defendant is entitled to a jury instruction on the lesser included offense of second

11

degree vehicular homicide.[6] See, e.g., *Smith*, 342 Ga. App. at 708-709 (1); *Brown*, 287 Ga. App. at 757-759; *Lefler*, 210 Ga. App. at 610-611 (2); *Hayles v. State*, 180 Ga. App. 860, 861-862 (3) (350 SE2d 793) (1986). Because there was some testimony here that O'Shields was speeding and following too closely at the time of the accident, the jury could have found these less culpable offenses caused the accident, rather than the DUI. As a result, the trial court erred in denying the requested jury instruction on the lesser included offense.

The State argues, however, that any error in this regard is harmless. We are not persuaded. Although the jury acquitted O'Shields of vehicular homicide based on reckless driving, we cannot say that the jury also would have rejected the lesser included offense of vehicular homicide based on speeding or following too closely had it been so charged. Moreover, to the extent that it might be inconsistent for the jury to acquit O'Shields of vehicular homicide based on reckless driving but find him guilty of vehicular homicide in the second degree based on speeding, we have

---

[6] Those cases in which we have concluded that no such instruction was required are distinguishable. See *Turner*, 342 Ga. App. at 885-886 (2) (instruction not warranted where there was no evidence that lesser traffic offense was the cause of the accident); *Otuwa*, 319 Ga. App. at 342-343 (2) (in case involving multiple counts of first degree vehicular homicide, trial court instructed jury as to second degree offense with regard to some of the counts, and jury found defendant guilty of first degree charge despite instruction on lesser included).

12

explicitly rejected challenges to inconsistent verdicts. *Blevins v. State*, 343 Ga. App. 539, 550 (4) (808 SE2d 740) (2017). As we explained, we "do not know and should not speculate on why a jury convicted on one offense and not another; the verdict could be the result of mistake, compromise, or lenity exercised in favor of the defendant." *Blevins v. State*, 343 Ga. App. 539, 550 (4) (808 SE2d 740) (2017). Therefore, we cannot find that the error in failing to instruct the jury on the lesser included offense was harmless,[7] and we are left to conclude that the trial court erred in denying the motion for new trial on this ground.[8] Because the evidence recounted

[7] The State's reliance on *Burney v. State*, 237 Ga. App. 765 (516 SE2d 802) (1999), is misplaced. In that case, we held that the defendant was not prejudiced by the failure to give a lesser included offense instruction for his kidnapping charge because there was no evidence to support it. Id. at 766 (2). In contrast here, there was evidence to support the lesser included charge. Additionally, *Shockley v. State*, 256 Ga. App. 892 (570 SE2d 67) (2002), does not alter the outcome. In that case, the defendant was on trial for DUI, and he requested a jury instruction on reckless driving. Id. at 895 (3). We concluded that there was no error in the failure to give such an instruction because reckless driving was not a lesser included offense of DUI as a matter of law or as a matter of fact. Id. In the instant case, however, second degree vehicular homicide is a lesser included offense of first degree vehicular homicide as a matter of law, and there were facts adduced at trial to support the charge.

[8] The State also contends that any error in failing to give the jury charge on the lesser included offenses is moot because the convictions merged at sentencing. *See Vergara v. State*, 287 Ga. 194, 196 (1) (b) (695 SE2d 215) (2010). But O'Shields would still be entitled to the lesser included offense charge with respect to the vehicular homicide conviction that the others merged into.

13

above was sufficient to support the convictions, the State may retry O'Shields if it chooses. *Shah v. State*, 300 Ga. 14, 18-19 (1) (c) (793 SE2d 81) (2016).

3. Finally, O'Shields contends that he received ineffective assistance of counsel when trial counsel moved to exclude evidence regarding the possession count before the State had rested its case, which alerted the State to its failure to prove possession and enabled it to add witnesses to establish this charge. In light of our conclusion that a new trial is required, we need not reach this enumeration of error.

For the foregoing reasons, we affirm the denial of the motion to suppress, reverse the denial of the motion for new trial based on erroneous jury instructions, and remand the case for further proceedings.

*Judgment affirmed in part; reversed in part; and case remanded. Doyle, P. J., and Coomer, J., concur.*

14