**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 20, 2020**

# In the Court of Appeals of Georgia

A19A2291. CROSS v. THE STATE.

GOBEIL, Judge.

Following a jury trial in 2016, Donovan Lewis Cross was convicted of rape and aggravated sodomy. The trial court denied his motion for new trial, and Cross now appeals, asserting the trial court erred in admitting evidence of two other offenses pursuant to OCGA §§ 24-4-404 (b) and 24-4-403 because they were not relevant as to motive, intent, or rebutting consent, and any probative value of the evidence was substantially outweighed by the danger of undue prejudice. For the reasons that follow, we affirm.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence; moreover, an appellate court

determines evidence sufficiency and does not weigh the evidence or determine witness credibility.

*Williams v. State*, 333 Ga. App. 879, 879 (777 SE2d 711) (2015) (citation and punctuation omitted). So viewed, the evidence shows that in March 2009, the victim lived in a lower level unit of an apartment complex in DeKalb County. During the early morning hours of March 5, 2009, the victim returned to her apartment after finishing work at midnight. She ate, watched television, and then went to bed. The victim later awakened and saw an unknown man, dressed only in his boxer shorts, standing over her in her bedroom. The victim did not know how the intruder gained access to her apartment, as she kept her doors locked and her windows closed. The victim, not expecting a visitor, panicked and tried to run out of the room, but the intruder stopped her from leaving. The victim recalled that the man, later identified as Cross, told her that he had been watching her through a window. The victim described feeling afraid as she "didn't know whether or not [she] was going to lose [her] life. [She] went to sleep, nobody was there, [she] woke up, somebody was standing over [her]. [She] didn't know if [she] was going to make it." Cross told her that he did not intend to hurt her so long as she did not "do anything," and he only wanted to perform oral sex on her.

2

Cross forced the victim to have oral sex by placing his mouth on her vagina, despite her pleading with him not to "do this," and that she "didn't want to do it." Cross then grabbed the victim's hand and put it on his penis, on which he had rubbed some baby oil that he found in the victim's room. Cross told the victim that if she touched and rubbed his penis for a few minutes, he would leave. Instead of leaving, however, Cross told the victim that he wanted to sleep with her for a few minutes and then he would leave. The victim continued to beg Cross to stop and "pleaded for him not to go any further." When the victim realized that he was not going to stop, she asked him to get a condom. Cross then put on a condom, climbed on top of the victim, and penetrated her vagina with his penis. The victim continued to plead with Cross to stop. The victim did not physically fight back as she "just wanted to do everything [she] could do to ensure that [she] made it." Cross ejaculated in the condom. After raping the victim, Cross got up and went to the bathroom and the victim heard the toilet flush. Cross then left the apartment.

After Cross exited the apartment, the victim ran to the front door and locked it, and then went into the bathroom, retrieved the condom from the toilet, and placed it in a ziploc bag. She also "bagged up" the condom wrapper, the box of condoms, and the bed sheets because she "wanted whoever did that to [her] to be caught." The

3

victim then called a friend and told her what had happened. The friend recalled that the victim was "very upset" and said that she had been raped. The victim did not feel safe in her own apartment so she went to her friend's apartment. When she arrived at the friend's apartment, she was "visibly upset" and crying. The victim's friend called the police to report the rape because the victim was "fearful" and did not want to call police. The victim recounted the ordeal in a statement to police and handed over the evidence she had collected at her apartment. The responding officers described that the victim appeared upset and looked like she had been crying. The police accompanied the victim back to her apartment to collect evidence.

Later that same day, the victim went with her friend to the hospital for a sexual assault examination. The victim recounted to medical personnel that Cross had used a condom. The sexual assault nurse observed that the victim was "[q]uiet, trembling [and] tearful." Although no external injuries were reported, the sexual assault nurse testified that vaginal injuries are not common due to the nature of the tissue in that area, and she did not expect to find any tears or bruises based on the fact that lubrication was used, "which would further facilitate entry without tearing or without overstretching the [vaginal] tissue."

4

The victim subsequently identified Cross in a photo lineup as her attacker. Testing of sperm cells found on both the inside and outside of the condom recovered from the victim's apartment matched to the same male profile. The DNA profile yielded a positive match to Cross.

Based on the foregoing, Cross was charged by indictment with one count each of rape and aggravated sodomy.[1] At trial, Cross's defense was that the sex was consensual. Specifically, he contended that there was no evidence of forced entry into the victim's apartment; Cross agreed to use a condom; a lubricant was used during sex; Cross gave the victim a massage prior to sex; and Cross never slapped or tied up the victim or restrained her in any way, and there was no evidence that he had any sort of a weapon. Moreover, Cross argued that, although the victim was allowed to use the bathroom alone, she never made any effort to escape, nor did she try to call the police when Cross went to the bathroom to flush the condom in the toilet even though she had access to both a landline and her cellphone in the bedroom. Cross also attempted to impeach the victim by highlighting her financial interest in a civil lawsuit against her apartment complex. Specifically, the victim retained an attorney

---

[1] Cross also was charged with one count of burglary, but this count was nolle prossed before trial.

soon after the incident and filed a lawsuit against the apartment complex less than two weeks later, in which she sought monetary damages.

The jury ultimately convicted Cross of rape and aggravated sodomy. The trial court sentenced Cross to a total term of life imprisonment with the possibility of parole. Cross filed a motion for new trial, as amended, which the trial court denied.[2] The instant timely appeal followed.

1. Although Cross does not challenge the sufficiency of the evidence as a separate enumeration of error, we have independently reviewed the record and conclude that the evidence presented at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that he was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). Here, the victim testified that Cross entered her apartment without her permission while she was sleeping and forced her to engage in oral sex and vaginal intercourse against her will. This evidence is sufficient to sustain his convictions for rape and aggravated sodomy. See OCGA § 16-6-1 (a) (1) ("A person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly

---

[2] The trial court granted Cross's motion to waive a hearing on his motion for new trial and entered a ruling on the parties' briefs and the record.

6

and against her will[.]"); OCGA § 16-6-2 (a) (1) (Sodomy is defined as "any sexual act involving the sex organs of one person and the mouth or anus of another."); OCGA § 16-6-2 (a) (2) ("A person commits the offense of aggravated sodomy when he or she commits sodomy with force and against the will of the other person[.]").

In the first instance, we note that "[t]he testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-14-8. See *Garner v. State*, 346 Ga. App. 351, 355 (1) n.12 (816 SE2d 368) (2018) (victim's testimony alone is sufficient to support a conviction of rape, and corroborating evidence is not required). Although Cross contended that the acts were consensual, the victim unequivocally testified that Cross forced her to engage in oral and vaginal sex against her will and prevented her from trying to get away. Moreover, the record shows that individuals who observed the victim soon after the attack, including her friend, police officers, and medical personnel, testified that the victim was clearly upset and distraught after the attack. "Resolving evidentiary conflicts and inconsistences and assessing witness credibility are the province of the fact finder, not the appellate court." *McNeely v. State*, 296 Ga. 422, 425 (1) (768 SE2d 751) (2015) (citations and punctuation omitted). Thus, we conclude there was sufficient evidence to support Cross's convictions for rape and aggravated sodomy.

7

2. Cross asserts that the trial court erred in admitting evidence of two other offenses pursuant to OCGA §§ 24-4-404 (b) and 24-4-403. In a pretrial filing, the State notified Cross of its intent to introduce evidence of multiple other offenses to show motive, intent, and to rebut his defense of consent. Following a hearing,[3] the trial court allowed evidence of four of the other acts. At trial, the State presented evidence of only two of the other acts, a May 2008 incident in which Cross was seen facing the window of a home with his hands on his pants, and a 2015 incident where a female detention officer observed Cross masturbating in an open area of a jail.

At trial, a sergeant with the DeKalb County police department testified that he responded to a call on May 23, 2008, about a suspicious person seen walking behind a row of townhouses. After making contact with the resident that made the 911 call, the sergeant shone a flashlight on the back row of the homes and saw an individual, who was wearing dark clothes, sitting on the back of an air conditioning unit. The individual, who the sergeant identified as Cross, was facing the back window of one of the townhouses. The sergeant testified as follows: Cross's "hands were – I could tell by his body position, his hands were in front of him, like in front of him in his

---

[3] A transcript of the January 8, 2016 hearing is not part of the record on appeal. However, the trial court issued a detailed order on the admissibility of the other acts.

8

crotch area and he was slightly rocking back and forth." Based on this conduct, the sergeant opined that Cross was masturbating, but he admitted that he did not actually witness Cross masturbating or view his penis. The sergeant called out to Cross, but Cross started walking away. "[A] foot chase started," and the sergeant apprehended Cross and arrested him. Cross was later charged and pleaded guilty to obstruction of a law enforcement officer and prowling.

Next, a female detention officer at the Dekalb County Sheriff's Office testified that on October 29, 2015, she was tasked with observing meal distribution at the county jail. Another inmate hit the call button, bringing the officer's attention to Cross's jail pod, where she observed Cross through a glass window "with his pants down masturbating." Cross was staring through the window in the officer's direction. The officer threatened to issue Cross a citation if he did not stop. Cross "humped his shoulders like [he didn't] care and just kept doing it." The officer then alerted a male colleague to place Cross in lock down and public indecency charges were pending against Cross at the time of the instant trial.

As relevant here, the trial court admitted the May 2008 incident to show intent and motive. Specifically, the court stated that "[a] reasonable jury could conclude that [Cross] was masturbating while watching this woman, and that he had a sexual

9

motivation in looking into her window," as he was seen with "his hands down the front of his pants." Similarly, in the instant case, Cross told the victim that he had watched her through her window prior to entering her apartment. With respect to the 2015 public indecency charge, the court ruled that this was relevant to show intent and to rebut the defense of consent. The court noted that Cross "had an intention to show other people his penis, when they did not ask to see it, much like here where he intended to show his penis to the victim, but she did not want to see it." The court found that, pursuant to OCGA § 24-4-403, the cumulative impact of multiple prior offenses would be unduly prejudicial. However, by only allowing a limited number of prior offenses, the court reasoned that any unfair prejudice would not substantially outweigh the probative value of the evidence, particularly in light of the "he said, she said" nature of Cross's defense, and where the primary issue at trial involved consent and whether Cross had permission to enter or stay in the victim's residence.

Cross never moved for a limiting instruction prior to the testimony regarding the two other acts. Rather, the trial court sua sponte raised the issue with the parties outside the presence of the jury after the State rested its case. The court then delivered the following instruction to the jury:

10

I want to start by giving you just a quick instruction. The last two witnesses for the State before the State[] rested were [two law enforcement officers]. I want to give you an instruction – I will give you a lot of instructions after closing arguments, but I do want to alert you to an instruction regarding those last two witnesses' testimony.

Sometimes evidence is admitted for a limited purpose. Such evidence may be considered by the jury for the sole issue or purpose for which the evidence is limited and not for any other purpose. In order to prove its case the State must show intent, may show motive, and must negate or disprove the defense of consent. To do so the State has offered evidence of other crimes, wrongs, or acts allegedly committed by [Cross]. You are permitted to consider that evidence only insofar as it may relate to those issues and not for any other purpose. You may not infer from such evidence that [Cross] is of a character that would commit such crimes. The evidence may be considered only to the extent that it may show the intent element, motive, or to negate or disprove the absence of consent that the State is required or authorized to prove in the case now on trial. Such evidence, if any, may not be considered by you for any other purpose. . . . Before you may consider any other alleged acts for the limited purpose stated, you must first determine whether it is more likely than not that [Cross] committed the other alleged acts. If so, you must then determine whether the acts shed any light on the issues for which the act was admitted and the crimes charged in the indictment in this trial.

11

During the jury charge, the court repeated this limiting instruction with respect to the jury's consideration of Cross's prior bad acts. Cross did not object to the limiting instruction given during trial, or during the jury charge. Cross challenged the admission of the other acts in his motion for new trial, but the trial court found no error.

We generally review a challenge to an evidentiary ruling for abuse of discretion. *Bradshaw v. State*, 296 Ga. 650, 656 (3) (769 SE2d 892) (2015). Under OCGA § 24-4-404 (b), evidence of other acts is "admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

> To determine whether other acts evidence is admissible for these purposes under the new Evidence Code,[4] the State must satisfy a three-part test: (1) the evidence needs to be relevant to an issue other than bad character; (2) the probative value of the other acts evidence cannot be outweighed substantially by its unfair prejudice; and (3) there must be sufficient proof to enable the jury to find that the accused committed the other acts.

---

[4] Although the offenses at issue here occurred in 2009, the trial began in September 2016, after the adoption of the new Evidence Code in 2013. See *Hamlett v. State*, 350 Ga. App. 93, 100 (2) n. 3 (828 SE2d 132) (2019).

*Hamlett v. State*, 350 Ga. App. 93, 99-100 (2) (828 SE2d 132) (2019) (citation omitted). Cross argues that the State failed to meet its burden under all three prongs of the test with respect to both acts, and asserts that the State failed to show that the other acts were relevant to any issue other than his character, or that the probative value outweighed the undue prejudice. We disagree.

(a) The first prong of our analysis requires a showing that the evidence was relevant "to an issue other than defendant's character[.]" *Morris v. State*, 340 Ga. App. 295, 306 (4) (797 SE2d 207) (2017) (citation and punctuation omitted). As our Supreme Court determined in *Olds v. State*, 299 Ga. 65 (786 SE2d 633) (2016), "evidence has 'relevance' if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Id. at 74-75 (2) (citation and punctuation omitted; emphasis omitted). Probative value must be assessed on a case-by-case basis. Id. at 76 (2). In this case, the trial court admitted the May 2008 incident to show intent and motive, and the 2015 act to show intent and to rebut the defense of consent. Here,

> because a plea of not guilty puts the prosecution to its burden of proving
> every element of the crime — including intent — evidence of other acts

13

that tends to make the requisite intent more or less probable to any extent is relevant.

Id. at 75 (2); see also *Burgess v. State*, 349 Ga. App. 635, 641 (3) (824 SE2d 99) (2019) ("As to intent, a defendant puts his intent in issue when he pleads not guilty unless he takes affirmative steps to withdraw intent as an element to be proved by the State." (citation and punctuation omitted)).

The other acts evidence outlined above regarding Cross's act of apparently masturbating outside a private residence, as well as in a jail cell in full view of a female guard were relevant as to intent.

> Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense.

*Kirby v. State*, 304 Ga. 472, 480-481 (4) (a) (819 SE2d 468) (2018) (citation omitted). Here, not only did Cross place intent at issue by pleading not guilty to the charges of rape and aggravated sodomy, but the defense portrayed the interaction as a consensual sexual encounter and alleged that the victim fabricated the rape allegation in order to

14

bring a civil lawsuit against the apartment complex to recover damages. In light of Cross's attacks on the credibility of the victim, the other acts "had the tendency to bolster the credibility of the victim by demonstrating that her circumstances were not unique." *Blevins v. State*, 343 Ga. App. 539, 547 (2) (d) (808 SE2d 740) (2017) (citation and punctuation omitted). First, with respect to the 2008 act, the sergeant testified that it appeared that Cross was masturbating while looking into the window of a private residence. Similarly, in this case, the victim testified that Cross had told her that he had looked into her window prior to entering the apartment, thereby suggesting that Cross was sexually motivated when he looked into the victim's window and entered her apartment with the intent to force the victim to engage in sexual acts against her will. See *Bradshaw*, 296 Ga. at 657 (3) (motive is "the reason that nudges the will and prods the mind to indulge the criminal intent") (citation and punctuation omitted). Similarly, the 2015 incident was relevant to show intent because Cross continued to masturbate, even after being ordered to stop by the female detention officer. Here, the victim testified that Cross forced her to engage in oral and vaginal sex despite her repeated pleas with him to stop. Consequently, the trial court did not abuse its discretion in concluding that evidence of the 2008 and 2015 acts was admissible for a relevant purpose under Rule 404 (b).

15

(b) Next, as to the prejudice prong, if the evidence is found to be relevant, the evidence is subject to the balancing test set forth in Rule 403 to determine whether its admission is more probative than prejudicial. *Olds*, 299 Ga. at 70 (2). But, "Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence." *Bradshaw*, 296 Ga. at 658 (3) (citation and punctuation omitted). And, "in close cases, balance under Rule 403 should be struck in favor of admissibility." *State v. Jones*, 297 Ga. 156, 164 (3) (773 SE2d 170) (2015), citing *United States v. Terzado-Madruga*, 897 F2d 1099, 1119 (B) (11th Cir. 1990).

Although Cross contends that the probative value of the other acts was substantially outweighed by the danger of unfair prejudice, in assessing this risk, appellate courts are required to make a "common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, . . . [and] temporal remoteness" to determine whether the trial court abused its discretion in admitting the evidence pursuant to Rule 403. *Brannon v. State*, 298 Ga. 601, 606 (4) (783 SE2d 642) (2016) (citation and punctuation omitted). In so assessing, "there is no requirement that the prior crime or transaction be absolutely identical in every

16

respect[;] . . . the proper focus is on the similarities, not the differences, between the separate crime and the crime in question." *Curry v. State*, 330 Ga. App. 610, 615-616 (1) (768 SE2d 791) (2015) (citations and punctuation omitted).

Here, as noted by the trial court, the probative value of the other acts was "great" because the State had a strong need for the evidence to combat Cross's attacks on the victim's credibility and to negate Cross's defense that the encounter was consensual. *Olds*, 299 Ga. at 75-76 (2). The only witness to the incident was the victim herself, and although the other acts were not overly similar to the charges offenses, each involved Cross's attempt at non-consensual sexual gratification with women he did not know. Moreover, these extrinsic acts "were not of such a heinous nature that they were likely to incite the jury to an irrational decision." *Blevins*, 343 Ga. App. at 545 (2) (a) (citation and punctuation omitted); cf. *Gerbert v. State*, 339 Ga. App. 164, 178 (3) (b) (793 SE2d 131) (2016) ("It is unlikely that the jury would be more inflamed in any appreciable measure by the relatively minor other acts evidence than the jury already was by the heinous sexual offenses against children with which he was actually charged. The impact of the other acts evidence was thus relatively minimal."). As for the time span between the two other acts in 2008 and 2015, and the instant offense, which occurred in 2009, Cross fails to cite to any

authority to support his assertion that such a span in time is too remote for admissibility. In any event, we find that the "temporal nexus was not too remote to erode the probative value of the" two other acts. *Gunn v. State*, 342 Ga. App. 615, 621-622 (1) (804 SE2d 118) (2017); see also *Burgess*, 349 Ga. App. at 643 (3) (determining that a time span of approximately 12 years "was not too remote to erode the probative value of the prior conviction[.]" (citation omitted)). Notably, "the trial court repeatedly gave limiting instructions that applied to all extrinsic evidence testimony," and cautioned that this evidence could only be considered as to the issues of intent, motive, and to negate consent and not for any other purpose. *Blevins*, 343 Ga. App. at 545 (2) (a).

(c) Finally, with respect to the issue of proof, which Cross challenges with respect to the May 2008 incident, in light of the testimony of the DeKalb County Sergeant, the jury could have properly found by a preponderance of the evidence that Cross committed the 2008 act of masturbating outside the townhouse. See *Bradshaw*, 296 Ga. at 658 (3) (holding that Ohio police officer's testimony allowed the jury to find by a preponderance of evidence that defendant committed the Ohio murder, thus satisfying the evidentiary prong of the OCGA § 24-4-404 (b) test).

18

Accordingly, in light of Cross's attacks on the victim's credibility, the strong presumption in favor of the admission of evidence under Rule 403, and the trial court's limiting instructions to the jury, we conclude that the trial court acted within its discretion in permitting the State to introduce evidence of Cross's other acts. See *Jones*, 297 Ga. at 159 (1) (Appellate courts will overturn a trial court's decision to admit evidence of other acts "only where there is a clear abuse of discretion.").

*Judgment affirmed. Dillard, P. J., and Hodges, J., concur.*