**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 21, 2025**

# In the Court of Appeals of Georgia

A25A1423. CROSS v. THE STATE.

DOYLE, Presiding Judge.

Following a jury trial, Timothy Joel Cross was convicted of child molestation.[1] After his motion for new trial was denied, Cross filed this appeal, in which he contends (1) that the trial court erred by admitting certain evidence; (2) that trial counsel provided ineffective assistance; and (3) that the cumulative effect of these errors mandates reversal. For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdict,[2] the evidence presented at trial shows that Cross's family was close with the family of K. G., who was 9 years old

---

[1] OCGA § 16-6-4 (a) (1).

[2] See *Fairwell v. State*, 311 Ga. App. 834, 835 (1) (717 SE2d 332) (2011), citing *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

at the time of the incident. K. G. frequently visited Cross's home and sometimes spent the night on his couch. In February 2017, K. G. and her brother were spending the night at Cross's home. That night, K. G. fell asleep on the couch and awoke to Cross at the couch with his hands under her pants touching her "on my private." At the time, K. G. was scared and did not say anything but moved around, prompting Cross to leave the couch and return to his bedroom, after which K. G. went back to sleep. The next morning, K. G. was still scared and said nothing about the incident to anyone, including her mother.

In the following weeks, K. G. had trouble sleeping and experienced recurring nightmares about Cross. About 2 weeks after the incident, K. G. disclosed the abuse to her mother, who reported the outcry. K. G. subsequently underwent a forensic interview, during which she provided contextual details about the abuse, including that Cross had touched her external pubic area with his hands on the night in question. K. G. also stated in the interview that prior to the abuse, Cross had given her gifts, including clothing, a cell phone, and money, which behavior the forensic interviewer testified was consistent with grooming. Based on this outcry, Cross was indicted for one count of child molestation.

Prior to trial, the State notified Cross of its intent to present other acts evidence

pursuant to OCGA § 24-4-414 showing that approximately 30 years prior, Cross had repeatedly molested his step-daughter, T. C., between the ages of nine and thirteen. At the pretrial hearing, T. C. testified to the following: that her mother was married to Cross and that she and her mother had moved in with Cross when she was about nine years old; that during the night, when T. C. was sleeping, Cross would wake her up by putting his hand in her underwear and fondling her external pubic area, sometimes putting his penis between her legs and using her hand to rub his penis; that she was fearful and pretended to be asleep during these incidents but was able to get Cross to stop by squirming;[3] that she initially told her mother that she was tired of Cross "bothering" her at night but that the issue was dropped; that when she was about 13, she again disclosed the ongoing abuse to her mother, whereupon her mother helped her secure her bedroom door and prevent Cross from accessing her at night; that once Cross had been prevented from entering her bedroom at night to molest her, he made peepholes in her wall and hid a recording device in her bedroom; and that, despite her disclosures, the abuse never resulted in Cross's prosecution. The trial court ruled that T. C.'s testimony was admissible in the underlying case pursuant to

---

[3] T. C. testified that as the abuse continued, she learned that she could stop or prevent these encounters by sitting up, telling Cross to stop, or asking him what he wanted.

OCGA § 24-4-414.

The State also notified Cross pretrial of its intent to present additional other acts evidence pursuant to OCGA § 24-4-404 (b) showing that in the 1980s, Cross had touched the genitals of his adult sister-in-law, D. F., without her consent while she was sleeping on a couch in Cross's home. D. F. testified as follows: that, when she was about 20 or 21, Cross was married to her sister, and she was taking a nap on a couch at Cross's home when Cross woke her up by touching her genitals over her clothing without her consent; that she was shocked and pretended to be asleep but moved her body, prompting Cross to remove his hand and leave the couch; that when she and her sister later confronted him about the incident, Cross apologized and stated that he would never do it again; and that she did not report the incident to the authorities. The trial court ruled that D. F.'s testimony was admissible pursuant to OCGA § 24-4-404 (b).

At trial, the jury heard testimony from K. G., K. G.'s mother, the forensic interviewer, and the lead investigator in connection with the indicted offense. As to the other acts evidence admitted under OCGA § 24-4-414, the jury heard testimony from T. C. and her mother. T. C.'s mother testified that she divorced Cross because he had molested T. C. The trial court admitted a certified copy of the transcript of

Cross's divorce proceedings, a portion of which was read to the jury in which Cross admitted under oath that he had molested T. C. As to the other acts evidence admitted under OCGA § 24-4-404 (b), the jury heard testimony from D. F. Cross testified in his own defense, categorically denying all allegations of abuse. The jury returned a guilty verdict.

Cross filed a motion for new trial, which he amended twice. After a hearing at which trial counsel testified, the trial court denied Cross's motion for new trial. Cross now appeals.

1. Cross contends that the trial court erred by (a) admitting evidence of his prior acts of child molestation of T. C. and (b) admitting evidence that he spied on and recorded T. C. in her bedroom. These contentions provide no basis for reversal.

(a) OCGA § 24-4-414 (a) provides that "[i]n a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant."

> Evidence that a defendant has engaged in a prior offense of child molestation is relevant to show, among other things, that the defendant has a disposition of character that makes it more likely that he did commit the act of child molestation charged in the instant case. . . . [N]othing in [OCGA § 24-4-]414 prohibits a party from offering

5

evidence of prior offenses of molestation . . . for other permissible purposes, such as to prove motive or intent. Indeed, propensity evidence often overlaps with or encompasses the narrower issues of motive and intent [in such cases].[4]

Here, the trial court admitted evidence of Cross's molestation of T. C. for the limited purposes of showing intent, motive, and lustful disposition and instructed the jury accordingly.

Cross concedes that the testimony regarding his prior molestation of T. C. satisfies the requirements of OCGA § 24-4-414. Nevertheless, Cross argues that the trial court erred by failing to exclude this evidence pursuant to OCGA § 24-4-403 based on the risks of unfair prejudice and confusion of the issues.[5] We disagree.

OCGA § 24-4-403 provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[OCGA § 24-4-]403 is an extraordinary remedy, and . . . in reviewing the

---

[4] *Wilson v. State*, 312 Ga. 174, 188 (1) (d) (860 SE2d 485) (2021).

[5] See id. at 189 (1) (d) (Whether "the requirements of [OCGA § 24-4-]414 have been satisfied . . . does not end the analysis for determining whether . . . prior offenses of child molestation are admissible. . . . [T]hat evidence must also satisfy [OCGA § 24-4-]403.").

admission of evidence under [OCGA § 24-4-]403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact. . . . [W]hen applying [OCGA § 24-4-]403 balancing to evidence of prior offenses of child molestation, the court must take into account that such evidence is naturally prejudicial. However, generally, it is not unfairly prejudicial; rather it is prejudicial for the same reason it is probative: it tends to prove the defendant's propensity to molest children.[6]

In applying OCGA § 24-4-403 to prior child molestation offenses, "the trial court must make a common sense assessment of all the circumstances that may logically bear on the probative or prejudicial value of the evidence, including the need for the evidence, the overall similarity between the prior offenses of molestation and the charged conduct, and the temporal remoteness of the prior offenses."[7] We review the application of OCGA § 24-4-403 to the trial court's admission of prior offenses of child molestation for abuse of discretion.[8]

Here, because Cross's intent was at issue, his other acts of child molestation

---

[6] (Citations, punctuation, and emphasis omitted.) Id. at 190 (2).

[7] Id. at 190-191 (2).

[8] See id. at 190 (2).

were relevant.[9] The State also needed the evidence to combat Cross's attacks on K. G.'s credibility.[10] Moreover, the similarities between Cross's molestation of T. C. and his molestation of K. G. are substantial. In both instances, Cross touched the external pubic areas of sleeping 9-year-old girls who were under his care in his home at night, and T. C. and K. G. both testified that, during the abuse, they were scared and shifted their bodies while pretending to remain asleep to get Cross to stop touching them. "These similarities make the other offense highly probative with regard to the defendant's intent in the charged offense."[11] And while Cross's abuse of T. C. predated his abuse of K. G. by approximately 33 years, "[t]he lapse of time between the prior occurrences and the offenses charged goes to the weight and credibility of

---

[9] See *Blevins v. State*, 343 Ga. App. 539, 544 (2) (a) (808 SE2d 740) (2017) ("[B]ecause a plea of not guilty puts the prosecution to its burden of proving every element of the crime — including intent — evidence of other acts that tends to make the requisite intent more or less probable to any extent is relevant. That is true whether or not intent is actively disputed at trial.") (punctuation and emphasis omitted), overruled on other grounds, *McElrath v. State*, 308 Ga. 104, 112 (2) (c), n. 16 (839 SE2d 573) (2020).

[10] See *Blevins*, 343 Ga. App. at 545 (2) (a) ("[T]he State had a strong need for the [other acts] evidence to combat [the defendant's] attacks on [the victim]'s credibility.").

[11] *Eubanks v. State*, 332 Ga. App. 568, 570 (1) (holding that prior offenses were sufficiently similar to the charged offense to be admitted pursuant to OCGA §§ 24-4-414, 24-4-403 because both minor victims were the same age during the abuse and the manner of abuse was the same).

such testimony, not its admissibility."[12] "Sufficient factual similarity of prior child molestation offenses to the charged offense can outweigh concerns of remoteness in time."[13]

Given the factors above and viewing the evidence in the light most favorable to its admission, the trial court did not abuse its discretion by determining that the probative value of the prior child molestation evidence was not substantially outweighed by the danger of unfair prejudice. The trial court properly considered whether the probative value of this evidence was not substantially outweighed by the danger of confusion of the issues, and it correctly instructed the jury on how to consider the prior child molestation evidence. Under these circumstances, we discern no abuse of discretion.[14]

(b) Cross also argues that the trial court committed reversible error by admitting evidence under OCGA § 24-4-414 showing that once T. C. had secured her bedroom

---

[12] (Punctuation omitted.) *Maner v. State*, 358 Ga. App. 21, 25 (1) (852 SE2d 867) (2020) (holding that a more than 50-year interval between the prior and charged offenses did not require exclusion under OCGA §§ 24-4-414, 24-4-403); see also *Harris v. State*, 340 Ga. App. 865, 868-869 (1) (b) (798 SE2d 498) (2017) (holding that a period of roughly 44 years between the prior and charged offenses did not require exclusion under OCGA §§ 24-4-414, 24-4-403).

[13] *Wilson*, 312 Ga. at 192 (2) (a) (iii).

[14] See id. at 193-194 (b).

door to prevent Cross from molesting her at night, Cross created peepholes in her wall and hid a recording device in her bedroom. We agree that the court erred by admitting this evidence pursuant to OCGA § 24-4-414, but reversal is unnecessary because the evidence was admissible under OCGA § 24-4-404 (b) to show intent.

(i) We do not read OCGA § 24-4-414 to apply to spying on or surreptitiously recording a minor.[15] As Cross concedes, however, the admission of such evidence is subject to OCGA § 24-4-404 (b), which states that

> [e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Nevertheless, Cross argues that evidence of his spying on and recording of T. C. could not have been admitted under OCGA § 24-4-404 (b) because the State did not provide

---

[15] See OCGA § 24-4-414 (d) ("As used in this Code section, the term 'offense of child molestation' means any conduct or attempt or conspiracy to engage in: . . . (1) [c]onduct that would be a violation of Code Section 16-6-4 [child molestation], 16-6-5 [enticing a child], 16-12-100.2 [computer child pornography], or 16-12-100.3 [obscene telephone contact with a child]; . . . (2) [a]ny crime that involves contact between any part of the accused's body or an object and the genitals or anus of a child; . . . (3) [a]ny crime that involves contact between the genitals or anus of the accused and any part of the body of a child; or . . . (4) [a]ny crime that involves deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on a child.").

notice of its intent to introduce such evidence.[16] This argument fails.

T. C. testified at a pretrial hearing that when Cross could no longer enter her bedroom at night to molest her, he made peepholes in her wall and hid a recording device in her bedroom. T. C.'s testimony provided sufficient pretrial notice to Cross of the general nature of this evidence.

(ii) Cross also argues that this evidence could not have been admitted under OCGA § 24-4-404 (b) because it was not relevant to any triable issue. Because the evidence was relevant to show intent, this argument also fails.

In order for evidence to be admissible under OCGA § 24-4-404 (b),

> the State must make a showing that: (1) evidence of extrinsic, or other, acts is relevant to an issue other than a defendant's character; (2) the probative value of the other acts evidence is not substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of [OCGA § 24-4-]403; and (3) there is sufficient proof so that the jury could find that the defendant committed the act in question.[17]

[A] defendant who enters a not guilty plea makes intent a material issue

---

[16] Under OCGA § 24-4-404 (b), "[t]he prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial."

[17] (Punctuation omitted.) *King v. State*, 346 Ga. App. 362, 369 (1) (816 SE2d 390) (2018).

which imposes a substantial burden on the government to prove intent, which it may prove by qualifying [OCGA § 24-4-]404 (b) evidence absent affirmative steps by the defendant to remove intent as an issue. Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses. Thus, where the state of mind required for the charged and extrinsic offenses is the same, the first prong of the [OCGA § 24-4-]404 (b) test is satisfied.[18]

Here, the State was required to prove the charged offense of child molestation by showing that Cross acted "with the intent to arouse his sexual desires."[19] Likewise, Cross's prior acts of spying on and secretly recording T. C. in her bedroom shows Cross's intent "to arouse his own sexual desires with underage girls."[20] Cross's intent to arouse his sexual desires by these actions is supported by the fact that Cross pivoted

---

[18] (Punctuation omitted.) *Bradshaw v. State*, 296 Ga. 650, 656-657 (3) (769 SE2d 892) (2015).

[19] *Gonzales v. State*, 359 Ga. App. 147, 149 (1) (a) (857 SE2d 88) (2021); see also OCGA § 16-6-4 (a) (1) ("A person commits the offense of child molestation when such person . . . [d]oes an immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]"

[20] *Blevins*, 343 Ga. App. at 544-545 (2) (a), 546 (2) (c) (holding that the testimony of non-victim witnesses in a child molestation case showing that the defendant had "used his position of authority . . . to prey on underage girls under his supervision through suggestive acts and sexual banter" was properly admitted under OCGA § 24-4-404 (b) to prove intent).

to these methods only after his years-long molestation of T. C. was terminated as a result of T. C. barricading herself in her bedroom at night.[21] Accordingly, this evidence was relevant to show intent — an issue other than Cross's character.[22]

(iii) Cross argues that this evidence could not have been admitted under OCGA § 24-4-404 (b) because its probative value was substantially outweighed by its undue prejudicial effect in violation of OCGA § 24-4-403. This argument is unavailing.

In its order admitting T. C.'s testimony, the trial court found that, under OCGA § 24-4-403, the undue prejudicial effect of the evidence did not substantially outweigh its probative value. Again, Cross's plea of not guilty placed his intent in issue,[23] and his attacks on K. G.'s credibility heightened the prosecutorial need for such evidence.[24] This evidence had significant probative value because it showed Cross's intent to exploit underage girls under his supervision to arouse his sexual desires.

Moreover, the evidence was not unduly prejudicial. To the contrary, Cross's

---

[21] Under these circumstances, Cross's argument that these actions merely evince the intent to spy upon or invade the privacy of another is unavailing.

[22] The trial court's order admitting T. C.'s testimony found that it was relevant to show, among other things, intent.

[23] See *Blevins*, 343 Ga. App. at 544 (2) (a).

[24] See id. at 545 (2) (a).

spying on and recording T. C. were minor compared to the severity of his continual molestation of T. C. and the offense for which he was on trial.[25] And any prejudicial impact of this evidence was minimized by the trial court's correct instruction to the jury that other acts evidence could be considered only for the limited purposes for which it was admitted.[26]

Accordingly, the trial court properly held that this evidence was admissible pursuant to OCGA § 24-4-403, thus making it eligible for admission under OCGA § 24-4-404 (b). Because this evidence was admissible under OCGA § 24-4-404 (b), the fact that the trial court erroneously admitted it under OCGA § 24-4-414 provides no basis for reversal.[27]

---

[25] See *Flowers v. State*, 307 Ga. 618, 623 (2) (837 SE2d 824) (2020) (holding that, where a defendant was accused of murdering his wife, the prejudicial effect of evidence showing that he previously beaten her did not outweigh its probative value because evidence of this incidental abuse would not "shock the average juror or otherwise render the jury incapable of weighing the evidence in a disinterested manner[.]").

[26] See *McKinney v. State*, 307 Ga. 129, 138 (3) (b) (834 SE2d 741) (2019) (holding that the prejudicial effect of other acts evidence was mitigated by the trial court's limiting instructions); *McWilliams v. State*, 304 Ga. 502, 511 (3) (820 SE2d 33) (2018) ("Any prejudicial impact of the extrinsic acts evidence was mitigated when the trial court gave the jury specific instructions about the limited purpose of the evidence.").

[27] See *Rayner v. State*, 307 Ga. App. 861, 867 (4) (706 SE2d 205) (2011) ("A successful enumeration of error requires both a showing of error and harm.").

2. Cross contends that the trial court abused its discretion by admitting evidence of Cross's nonconsensual touching of D. F.'s genitals. We disagree.

As noted in Division 1 (b) (ii), OCGA § 24-4-404 (b) allows for the introduction of other acts evidence, provided that (1) the evidence is not admitted to show propensity and is instead introduced for other purposes, such as intent; (2) the probative value of the evidence is not substantially outweighed by its unfair prejudice; and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act.[28]

> The relevance analysis in the first part is governed by OCGA § 24-4-401, which defines 'relevant evidence' as evidence that 'has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' This is a binary question — evidence is either relevant or it is not. For the second part of the test, we apply the balancing test set forth in [OCGA § 24-4-]403[.] The third part of the test is a preliminary question of fact for the trial court. Other acts evidence may be admitted if the court concludes that the evidence is sufficient for the jury to find by a preponderance of the evidence that the other act was committed. A trial court's decision to admit evidence pursuant to OCGA § 24-4-404 (b) is reviewed for a clear abuse of

---

[28] See *Ramirez-Ortiz v. State*, 361 Ga. App. 577, 587 (4) (b) (865 SE2d 206) (2021).

discretion.[29]

In this case, Cross does not argue that the State failed to satisfy the third part of the OCGA § 24-4-404 (b) test. Accordingly, we focus our analysis on the first two parts.

(a) "Evidence that tends to prove [Cross]'s intent in this case could be relevant because he put his intent at issue by pleading not guilty, and he did not take any affirmative steps to relieve the State of its burden to prove intent."[30] Because Cross's intent to commit the charged offense was at issue, "the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. . . . Where the state of mind required for both offenses is the same, the extrinsic crime is relevant to the charged offense."[31]

Here, the State was required to prove that Cross touched K. G.'s external pubic area while she was sleeping with the intent to arouse his sexual desires.[32] Likewise,

---

[29] (Citations and punctuation omitted.) Id.

[30] *Kirby v. State*, 304 Ga. 472, 480 (4) (a) (819 SE2d 468) (2018).

[31] (Citation and punctuation omitted.) *Ramirez-Ortiz*, 361 Ga. App. at 588 (4) (b) (i).

[32] See OCGA § 16-6-4.

Cross's extrinsic act of touching D. F.'s external pubic area while she was sleeping indicates the same intent — to arouse his sexual desires through nonconsensual touching of a sleeping victim. Accordingly, this evidence was relevant to show intent — an issue other than Cross's character.[33]

(b) In performing the balancing test of OCGA § 24-4-403 to other acts evidence, the trial court "is required to make a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness."[34] We reiterate that OCGA § 24-4-403 "is an extraordinary remedy, and that in reviewing the admission of evidence under OCGA § [24-4-]403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact."[35]

---

[33] See *Ramirez-Ortiz*, 361 Ga. App. at 588-589 (4) (b) (i), (4) (b) (ii) (affirming the admission of other acts evidence under OCGA § 24-4-404 (b) to show intent in a child molestation prosecution because the other acts evidence showed that the defendant had touched the external pubic areas of adult women in his home in a manner similar to that in which he touched the external pubic area of the minor victim).

[34] (Punctuation omitted.) *Jones v. State*, 301 Ga. 544, 547 (1) (802 SE2d 234) (2017).

[35] *Morgan v. State*, 307 Ga. 889, 897-898 (3) (d) (838 SE2d 878) (2020).

17

Here, the trial court found that there was a compelling prosecutorial need for the other acts evidence. This finding is supported by the fact that intent was at issue,[36] and the prosecutorial need for the other acts evidence was heightened by Cross's attacks on K. G.'s credibility at trial.[37] The trial court also found that the other acts evidence was "very similar" to the conduct for which Cross was on trial. In both instances, Cross touched the external pubic areas of females who were asleep in his home against their will, and D. F. and K. G. both testified that, during the touching, they were scared, pretended to stay asleep, and moved their bodies to get Cross to stop touching them. Although Cross's touching of D. F. predated his molestation of K. G. by approximately 33 years, the trial court found that the factual similarity between the charged and extrinsic conduct outweighed concerns of remoteness in time. And any prejudicial effect of this evidence was minimized because the trial court properly instructed the jury on how to consider other acts evidence.[38]

---

[36] Contrary to Cross's argument, the fact that Cross did not raise the defenses of accident and mistake of fact does not diminish the prosecutorial need for the other acts evidence. See *Ramirez-Ortiz*, 361 Ga. App. at 585 (4) (a) (i) ("[R]egardless of whether [the defendant] argued that the touching was an accident, the State was still required to show that his actions were intentional.")

[37] See *Blevins*, 343 Ga. App. at 545 (2) (a).

[38] See *McKinney*, 307 Ga. at 138 (3) (b); *McWilliams*, 304 Ga. at 511 (3).

18

Accordingly, "[w]e find no basis in the record to support the extraordinary remedy of excluding this evidence as unduly prejudicial under OCGA § 24-4-403, particularly given the strong statutory presumption of admissibility and in light of the close similarities between the [acts] at issue."[39]

3. Cross contends that the trial court erred by admitting Cross's statements from his 1997 divorce trial from T. C.'s mother in which he admitted to molesting T. C. because (a) the statements were not voluntary and (b) due process required exclusion of the statements. We disagree on both counts.

The State's notice of intent to introduce evidence of Cross's prior child molestation of T. C. under OCGA § 24-4-414 included Cross's statements from his divorce proceedings that he had molested T. C.

(a) Cross argues that his statements from his 1997 divorce proceedings were inadmissible in this case because the State failed to show that they were made voluntarily. This argument fails.

Below, Cross argued that these statements were in the nature of a confession, so the trial court reserved ruling on the admissibility of these statements pending a

---

[39] (Punctuation omitted.) *Ramirez-Ortiz*, 361 Ga. App. at 588 (4) (b) (ii).

*Jackson-Denno*[40] hearing, at which the State tendered a certified copy of the complete transcript of Cross's 1997 divorce trial. After considering the totality of the circumstances, the trial court found that Cross's statements were voluntary because they were made without hope of benefit or fear of injury and because he had the benefit of counsel when he made the statements.

> In deciding the admissibility of a statement during a *Jackson-Denno* hearing, the trial court must consider the totality of the circumstances and must determine the admissibility of the statement under the preponderance of the evidence standard. Unless the factual and credibility findings of the trial court are clearly erroneous, the trial court's decision on admissibility will be upheld on appeal.[41]

"An appellate court may consider all the evidence of record, and is not limited to the evidence adduced at a *Jackson-Denno* hearing, in determining the admissibility of a confession."[42]

The record here reflects that Cross was not in custody when he admitted to

---

[40] 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

[41] (Punctuation omitted.) *Munn v. State*, 313 Ga. 716, 726-727 (7) (873 SE2d 166) (2022).

[42] *Huffman v. State*, 311 Ga. 891, 895, n. 5 (860 SE2d 721) (2021).

molesting T. C., nor was he being prosecuted for this molestation.[43] Additionally, when Cross made these incriminating statements, he had the benefit of counsel to advise him of his constitutional rights.[44]

Cross asserts that his statements were coerced because T. C.'s mother threatened to deprive him of custody of their son if he did not admit to molesting T. C.; however, the trial court's findings to the contrary were not clearly erroneous. At trial, T. C.'s mother testified that she never asked for sole custody of their son or threatened him to say that he had molested T. C., and Cross's trial testimony confirmed that the divorce trial transcript contains no indication that T. C.'s mother had threatened him in this way.[45] Under these circumstances, the trial court did not err by finding Cross's statements voluntary.[46]

---

[43] See *Vaughn v. State*, 261 Ga. 686, 687 (2) (410 SE2d 108) (1991) ("[T]he defendant was . . . not in custody. The trial court's finding that the noncustodial statement was voluntary was not clearly erroneous.").

[44] See *Stinson v. State*, 370 Ga. App. 603, 608 (2) (a) (898 SE2d 612) (2024) ("When determining the voluntariness of . . . a defendant's incriminating statement, the trial court considers . . . whether the accused was advised of his constitutional rights[.]") (punctuation omitted).

[45] Regarding the questions that he was asked about molesting T. C. in his 1997 divorce trial, Cross testified that he had "answered honestly" and "admitted to what [he] thought [he] did[.]"

[46] See generally *State v. Leverette*, 320 Ga. 806, 809 (2) (912 SE2d 533) (2025) ("We have held that the phrase 'slightest hope of benefit' is not to be understood in

(b) Cross also argues that due process required the exclusion of his divorce trial statements because records of an independent 1997 criminal investigation into the allegations[47] had been destroyed by this trial. According to Cross, these records contained exculpatory evidence, and their destruction prevented him from presenting a complete defense and rendered the introduction of Cross's testimony from his divorce trial fundamentally unfair. This argument fails.

It is true that "[t]he State has a constitutional obligation to preserve evidence that might be expected to play a significant role in the suspect's defense."[48] Setting aside the fact that Cross was not formally prosecuted for (and, thus, did not have to formally defend against) T. C.'s allegations of child molestation,[49] the State violates

---

the colloquial sense, and that the phrase instead refers to promises related to reduced criminal punishment — a shorter sentence, lesser charges, or no charges at all.") (punctuation omitted).

[47] At trial, the lead investigator testified that in 1997, T. C. was interviewed by law enforcement based on her allegations against Cross but that the investigation did not result in Cross's arrest. The lead investigator further testified that, upon contacting the agency that would have conducted this investigation, she learned that the associated investigative file, along with all other such files from 1997, had been destroyed.

[48] (Punctuation omitted.) *State v. Blackwell*, 245 Ga. App. 135, 137-138 (2) (b) (537 SE2d 457) (2000), quoting *California v. Trombetta*, 467 U. S. 479, 488 (II) (104 SCt 2528, 81 LE2d 413) (1984).

[49] See *Arizona v. Youngblood*, 488 U. S. 51, 58 (109 SCt 333, 102 LE2d 281) (1988) (describing the State's duty to retain and preserve material that might be of

a defendant's right to due process only when "it destroys evidence that has 'constitutional materiality' — ... evidence that (1) has an exculpatory value that was *apparent* before the evidence was destroyed and (2) is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."[50]

Here, Cross summarily asserts that the destroyed investigative file contained exculpatory evidence explaining why the agency declined to prosecute T. C.'s outcry. But the record before us does not support this assertion, as there is no indication of what evidence the investigative file contained. At trial, the lead investigator testified that all she could say for certain about the investigation is that T. C. spoke with an investigator who had no independent recollection of the incident. The lead investigator testified that she did not know whether this interview was recorded. Because the contents of the investigative file are unknown, we cannot say that it contained evidence whose exculpatory value was apparent prior to its destruction.[51]

---

evidentiary significance as limited to "a particular prosecution.").

[50] (Emphasis supplied; punctuation omitted.) *Blackwell*, 245 Ga. App. at 138 (2) (a), quoting *Trombetta*, 467 U. S. at 489 (II).

[51] See *State v. Miller*, 287 Ga. 748, 754 (699 SE2d 316) (2010) ("The key is the 'apparent exculpatory value' of the evidence prior to its destruction or loss[,] and 'apparent' in this context has been defined as 'readily seen; visible; readily

Pretermitting whether the investigative file may have contained *potentially* exculpatory evidence, "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed."[52] For this reason, the United States Supreme Court has held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."[53]

The record here contains no evidence that the investigative file was destroyed by the State in bad faith and instead was purged as a routine matter due to its age.[54] Absent bad faith by the State, there was no due process violation.[55] Accordingly, Cross

---

understood or perceived; evident; obvious.'").

[52] *Trombetta*, 467 U. S. at 486 (II).

[53] *Youngblood*, 488 U. S. at 58. See also *Smith v. State*, 270 Ga. 68, 71 (6) (508 SE2d 145) (1998) ("[T]he destruction of potentially exculpatory evidence does not violate due process unless the police acted in bad faith in failing to preserve the evidence.").

[54] See *Swanson v. State*, 248 Ga. App. 551, 551-552 (1) (a) (545 SE2d 713) (2001) (no bad faith where potentially exculpatory evidence was destroyed pursuant to standardized retention and destruction guidelines).

[55] See *Youngblood*, 488 U. S. at 58 ("[T]here was no suggestion of bad faith on the part of the police. It follows . . . that there was no violation of the Due Process Clause.").

has failed to establish error in admitting his divorce trial statements.

4. Cross contends that his trial counsel was deficient for (a) failing to file a motion to suppress the results of a search of Cross's home; (b) failing to adequately cross-examine the State's witnesses; and (c) failing to object to the trial court's allegedly improper instruction on evidence admitted under OCGA § 24-4-414.

To prevail on claims of ineffective assistance of counsel, Cross must show that his counsel's performance was "deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[56] "A reasonable probability is a probability sufficient to undermine confidence in the outcome. That requires a substantial, not just conceivable, likelihood of a different result."[57] "This burden is a heavy one. And if [Cross] fails to show either deficiency or prejudice, this Court need not examine the other prong[.]"[58] "Whether a trial attorney renders

---

[56] (Citation and punctuation omitted.) *Anderson v. State*, 371 Ga. App. 139, 141 (2) (899 SE2d 770) (2024), citing *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

[57] (Citation and punctuation omitted.) *Thornell v. Jones*, 602 U. S. 154, 163 (II) (144 SCt 1302, 218 LE2d 626) (2024).

[58] (Punctuation omitted.) *Holmes v. State*, 375 Ga. App. 470, 475 (2) (916 SE2d 500) (2025).

constitutionally ineffective assistance is a mixed question of law and fact. The proper standard of review requires that we accept the trial court's factual findings unless clearly erroneous, but we independently apply the legal principles to the facts."[59]

(a) Cross argues that trial counsel performed deficiently by failing to move to suppress evidence obtained from the execution of a search warrant of his home that he claims was insufficiently particularized and unsupported by probable cause. We disagree.

"When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion."[60]

The lead investigator testified that she obtained a search warrant for Cross's home based on the contents of K. G.'s and T. C.'s interviews and that the object of the warrant was to verify the details K. G. and T. C. had provided. Although Cross asked his trial counsels[61] about the warrant in general terms at the motion for new trial

---

[59] (Citation and punctuation omitted.) *Pierre v. State*, 360 Ga. App. 95, 98 (858 SE2d 532) (2021).

[60] (Punctuation omitted.) *Rickman v. State*, 309 Ga. 38, 41 (2) (842 SE2d 289) (2020).

[61] Cross's initial attorney of record was replaced by other counsel during pretrial proceedings.

hearing, including whether they had reviewed it and had any basis for challenging it, Cross has not cited to any part of the record actually containing either the search warrant or supporting affidavit,[62] and our review of the record reveals the presence of neither document.[63] Consequently, we cannot say that trial counsel rendered deficient performance arising from failure to file a motion to suppress the search warrant.[64]

In any event, Cross has not demonstrated harm. Photographs of the exterior and interior of Cross's home taken pursuant to the warrant were cumulative of otherwise admissible evidence and testimony about the appearance and configuration of Cross's home.[65] The remaining evidence obtained pursuant to the warrant, pictures of a video camera and some video cassettes found in Cross's home, did not incriminate Cross.

---

[62] See Court of Appeals Rule 25 (d) (1) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of a specific reference, the Court will not search for and may not consider that enumeration.").

[63] See *Harris v. State*, 358 Ga. App. 204 (1) (854 SE2d 374) (2021) ("[I]t is not the function of this Court to cull the record on behalf of a party in search of instances of error. The burden is upon the party alleging error to show it affirmatively in the record.") (punctuation omitted).

[64] See *Holmes v. State*, 375 Ga. App. 470, 476 (2) (a) (916 SE2d 500) (2025) (declining to find deficiency based on trial counsel's failure to suppress an allegedly invalid search warrant because the basis of the warrant's alleged invalidity was not apparent from the record).

[65] See id. at 476-477 (2) (a) (no prejudice based on trial counsel's failure to suppress evidence that was cumulative of the testimony of other witnesses).

Under these circumstances, Cross has failed to demonstrate a substantial likelihood of a different trial result had the evidence obtained pursuant to the warrant been suppressed. Consequently, this claim of ineffective assistance fails.

(b) Cross argues that trial counsel was deficient for failing to adequately cross-examine (i) the lead investigator; (ii) K. G.'s mother; and (iii) K. G. We disagree.

> The scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel. More specifically, the extent of cross-examination is a strategic and tactical decision. Decisions about cross-examination do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances.[66]

(i) Cross argues that trial counsel was deficient for failing to adequately cross-examine the lead investigator to show that the video camera and cassettes found in Cross's home were not inculpatory and that the search of his home did not reveal any holes in the walls. Cross cannot show deficient performance because the lead investigator conceded on direct examination that the camera and cassettes did not incriminate Cross, and trial counsel put up multiple witnesses familiar with Cross's home who testified that they had never seen any holes in the walls there.

---

[66] (Citations, punctuation, and emphasis omitted.) *Gaston v. State*, 307 Ga. 634, 642 (2) (d) (837 SE2d 808) (2020).

(ii) Although Cross argues that trial counsel was deficient for failing to cross-examine K. G.'s mother about her history of substance abuse and potential bias against him, K. G.'s mother admitted, and several other witnesses testified extensively, to her substance abuse issues. Moreover, K. G.'s mother admitted on direct examination that she was aware of T. C.'s allegations against Cross and had communicated with T. C. after K. G.'s outcry, highlighting her potential alignment with T. C. and bias against Cross.[67] Under these circumstances, Cross has not shown that trial counsel's decision not to cross-examine K. G.'s mother on these topics was objectively unreasonable.

(iii) Cross argues that trial counsel was deficient for failing to cross-examine K. G. to show that she had continued to communicate with Cross after he had molested her. Trial counsel, however, elicited testimony and admitted several exhibits establishing this fact. Moreover, at the motion for new trial hearing, trial counsel testified that a strategic decision was made to stop the cross-examination of K. G. after she started crying to avoid inflaming the jury. In light of this assessment, "trial counsel's decision to focus his cross-examination on [other] witnesses . . . is exactly

---

[67] This bias was further highlighted by trial counsel's examination of a witness who K. G.'s mother said had told her that Cross "slept with fourteen-year-old girls[.]"

the kind of strategic and tactical decision trial counsel was empowered to make."[68]

(c) Cross argues that trial counsel was deficient for failing to object to the trial court's allegedly improper instruction on evidence admitted pursuant to OCGA § 24-4-414. Trial counsel was not deficient in this regard.

During its final charge, the trial court instructed the jury on evidence admitted under OCGA § 24-4-414 as follows:

> In order to prove child molestation, the State must show intent and may show motive. To do so, the State has offered evidence of another offense of child molestation allegedly committed by the accused. You are permitted to consider that evidence for its bearing on any matter to which it is relevant, including lustful disposition, and not for any other purpose.

Cross argues that the placement of the phrase "including lustful disposition" in the final, as opposed to the introductory, sentence constituted an improper judicial comment that lustful disposition was relevant to Cross's prosecution.[69]

---

[68] Id. at 643 (2) (d). See also *Lawrence v. State*, 286 Ga. 533, 534 (2) (690 SE2d 801) (2010) (trial counsel's decision not to cross-examine multiple State's witnesses was reasonable trial strategy and did not amount to ineffective assistance because trial counsel testified that cross-examination of the witnesses in question would not have helped, and would have been potentially detrimental to, the defense).

[69] See OCGA § 17-8-57 (a) (1) ("It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused.").

Nevertheless, [i]n assessing an assertion of an erroneous jury instruction, the instruction must be evaluated in the context of the trial court's jury instructions as a whole[,]"[70] and the remainder of the trial court's instruction regarding OCGA § 24-4-414 evidence made clear that the judge was not expressing any opinion on whether a material fact had been proven or whether Cross was guilty: "Before you may consider any other alleged acts, you must first determine whether the accused committed the alleged acts and such act was, in fact, an act of child molestation. . . . By giving this instruction, . . . the Court in no way suggests to you that the defendant has or has not committed any other acts[.]"

Moreover, the complained-of portion of the instruction was not an incorrect statement of the law. "[T]his Court has repeatedly held that the jury may consider other acts evidence under . . . [OCGA § 24-4-]414 for any relevant purpose, including propensity to commit the crimes."[71] Because the charge was a correct statement of the

---

[70] (Punctuation omitted.) *Wright v. State*, 365 Ga. App. 288, 289 (1) (878 SE2d 137) (2022).

[71] *Dixon v. State*, 350 Ga. App. 211, 217 (2) (828 SE2d 427) (2019). See also *Maner*, 358 Ga. App. at 25-26 (2) (holding, under plain-error analysis, that the trial court did not err by instructing the jury to consider evidence admitted pursuant to OCGA § 24-4-414 "for any relevant purpose and intent, including lustful disposition"); *Robinson v. State*, 342 Ga. App. 624, 634 (4) (a) (805 SE2d 103) (2017) ("[T]he State can seek to admit evidence under [OCGA § 24-4-414] for any relevant purpose, including propensity.") (punctuation omitted).

law and not improper, "[c]ounsel cannot be ineffective for failing to make a meritless objection to a proper charge."[72]

5. Finally, citing *State v. Lane*,[73] Cross contends that all of the claims he has raised resulted in cumulative prejudice affecting the outcome of his trial. Even assuming that the failure to suppress the search of Cross's residence was deficient, "[i]n order to establish a claim of cumulative error, a defendant must show, inter alia, that at least two errors were committed in the course of trial. Because we have found only one [assumed] error at trial on the grounds asserted by [Cross], which error we determined to be harmless, [Cross]'s claim of cumulative error fails."[74]

*Judgment affirmed. Markle and Padgett, JJ., concur.*

---

[72] (Punctuation omitted.) *Harris v. State*, 333 Ga. App. 118, 124 (4) (c) (775 SE2d 602) (2015).

[73] 308 Ga. 10 (838 SE2d 808) (2020).

[74] (Citation and punctuation omitted.) *Thrift v. State*, 310 Ga. 499, 515 (10) (852 SE2d 560) (2020).